## Irwin Herminie Traction Company, Appellant. v. West Penn Electric Company.

*Contracts—Electric companies—Contracts for electric power—Equity—Injunction.*

A contract between a traction company and an electric company required that the traction company pay a charge of $2,000.00 per year "based on ample power to operate not more than three double truck cars at any one time"; the traction company alleging that the power furnished was insufficient, refused to pay in accordance with the contract; the electric company thereupon refused to furnish further power; the traction company brought a bill in equity to require the electric company to furnish power and for the determination of what amount, if any, might be due defendant under

the contract. A preliminary injunction was awarded as prayed for and the power was turned on and furnished continuously after the bill was filed. Defendant claimed the full amount of the contract price of the power; plaintiff claimed that it was not required to pay during the period when the power was not satisfactorily furnished. It appeared that plaintiff had been compelled to procure extra power for which it paid $338.01. The lower court dissolved the preliminary injunction and awarded defendant the amounts called for by the contract, less the amount paid by plaintiff for procuring extra power. *Held,* no error.

Argued Sept. 30, 1915. Appeal, No. 31, Oct. T., 1915, by plaintiff, from decree of C. P. Westmoreland Co., No. 769, in equity, dismissing exceptions to findings of fact and conclusions of law, in case of Irwin-Herminie Traction Company, a Corporation, v. West Penn Electric Company, a Corporation. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Bill in equity for an injunction.

DOTY, P. J., filed the following findings of fact, conclusions of law and opinion:

1. The plaintiff company is a duly organized street railway and is engaged in operating a line of a railway between the Village of Herminie and the Borough of Irwin in the County of Westmoreland.

2. The defendant is a duly organized electric company and is engaged in furnishing electric light and power to corporations and individuals in the said County of Westmoreland and elsewhere.

3. The West Penn Electric Company, defendant herein, on July 6th and September 16th, 1909, entered into written contracts with the Manor Valley Railway Company, to which latter company the Irwin-Herminie Traction Company, the plaintiff herein, is the successor by merger.

4. The said contracts required the defendant company for a certain period and for a certain consideration named to furnish to the plaintiff company electric power

sufficient to operate not more than three double truck cars at any one time.

5. Power was furnished by the defendant under such contracts from Nov. 22, 1909, until the bill was filed in this case on December 24, 1910, and power is still being satisfactorily supplied to the plaintiff company.

6. Prior to August 1, 1910, the service at all times was not satisfactory to the plaintiff company; the power was not always sufficient to operate three double truck cars at one time. Because the power was insufficient the plaintiff was compelled to get power from another company. The amount paid for such extra power was the sum of $338.01. There is no evidence to show other outlays, expenses or losses occasioned the plaintiff company by reason of shortage of power.

7. If the contract had been fully performed by the defendant company from Nov. 22, 1909, to November 30, 1910, the plaintiff would have been obliged to pay the sum of

$6,290.06

It has paid the sum of .................... 4,389.46
_____

Leaving a balance due, ................$1,900.60

The plaintiff is entitled to a deduction for extra
     power purchased ..................... 338.01
_____

The amount due and payable ...............$1,562.59

With interest from Dec. 1, 1910.


CONCLUSIONS OF LAW.


1. As plaintiff in order to operate its cars was required to secure power from another source the defendant's bill should be reduced by the actual cost of such power.

2. As the plaintiff is indebted to the defendant in a large sum and was so indebted at the time of filing the bill in this case, the cost of the proceeding should be paid by the plaintiff company.

3. As the power which the defendant was required to furnish has not been turned off; as the two companies are now working harmoniously and there is no purpose to discontinue the supply of power, the injunction should be no longer continued.

### DISCUSSION.

The consideration of this case is undertaken with some hesitation. At first blush the whole matter seems confused and hard to understand. Some difficulty is occasioned by the subject-matter of controversy and the character of the evidence which was introduced. But the principal trouble arises through the long delay which has characterized the proceeding. The impressions at the hearing have faded and the great advantage of hearing the witnesses has been lost. The bill was filed December 24, 1910; the testimony was taken Dec. 19, 1912, and the case was not called for argument until June 10, 1914.

But if we can steer clear of technical terms and rivet attention on the real matter in dispute it may be possible to avoid confusion and arrive at a satisfactory conclusion. The contract between the parties requires the plaintiff to pay a demand charge of two thousand dollars per year "based on ample power to operate not more than three (3) double truck cars at any one time." The plaintiff alleging that the power furnished was insufficient refused to pay in accordance with the contract. Because of such refusal, the defendant on the 24th December discontinued the lines and refused to furnish further power. The bill avers failure on part of the defendant company; that the plaintiff had paid all that was fairly due and prays: 1. That a mandatory injunction issue requiring the defendant to furnish power in accordance with the contract and, 2. That the court determine what amount, if any, may be due the defendant under the contract from Nov. 22, 1909, to Nov. 30, 1910. The power was turned

on; it has been furnished continuously since the bill was filed and the service is satisfactory. The only matter, therefore, to be determined is the amount, if any, due the defendant for power furnished between Nov. 22, 1909, and Nov. 30, 1910.

The defendant claims the sum of $1,900.60 with interest from first of December, 1910. This claim seems to be justified under the terms of the contract, if it be conceded that the contract was performed by the defendant. There can be no dispute about the prices because they are fixed in the agreement and the parties agree as to the amounts paid. A simple calculation, therefore, shows that under the contract and allowing for payments made that there is due the sum of $1,900.60. The plaintiff, however, contends that it should not be required to pay anything because the service contracted for was not rendered by the defendant company.

The plaintiff's cars could not be operated successfully from November, 1909, till August, 1910. The trouble experienced has been told by witnesses for plaintiff and their statements have not been contradicted. During this period frequent complaints were made to the defendant. The witnesses do differ as to the cause of the trouble and they also disagree as to whether sufficient power was supplied. Much testimony was produced on these two matters. Without attempting to review such testimony in detail it is a significant fact that there has been no trouble in running the cars and no complaint since about August 1, 1910. It further appears that in June, 1910, the defendant company caused the wires from the Manor sub-station to be connected with the trolley wires of the plaintiff at Irwin and that also in June or July, 1910, a Westinghouse induction motor of 300 kilowatt capacity was removed from the sub-station at Arona and there was put in its place a synchronous motor of the capacity of 375 kilowatts. After such changes were made, complaints ceased and the cars were run without unnecessary interruption. Before the

changes were made there was constant trouble. After the new machine was installed at Arona and the new connection made with the Manor sub-station there was no further trouble in the running of the cars. With such facts before us it looks as if there had been some defect in the service and that the trouble of moving the cars was due to an insufficient supply of power. In order to reach such conclusion it is not necessary to be familiar with voltage, amper or kilowatt. Nor is it essential to wrestle with the testimony of experts who differ in opinion as to the cause of the trouble.

But it does not follow if the power supplied was insufficient that the plaintiff is to be relieved from payment. There was at least partial performance under the contract, and it does appear that the defendant made every reasonable effort to supply this deficiency. Although the power was to be supplied from the Arona sub-station connection was made with wires at Manor. Besides the plaintiff has already paid over four thousand dollars which is an admission that it ought to pay what the service was worth. But even conceding that no more should be paid than the service was worth, we have no data except in one particular on which an estimate could be used. There is no evidence to show what amount of loss, if any, was occasioned by the alleged default of the defendant. The testimony does show, however, that it was necessary to get extra power and that the sum of $338.01 was paid for the same, which amount should fairly be credited on defendant's bill. The account would then stand as follows:

Balance due defendant ....................$1,900.60
Less amount paid Pittsburgh & West. Ry. Co...  338.01
                                          _____
                                          $1,562.59

Interest from Dec. 1, 1910.

And now, July 25, 1914, this case came on to be heard on bill, answer and proofs and after argument of counsel and due consideration, it is ordered, adjudged and de

creed that the preliminary injunction heretofore granted be dissolved; that amount due the defendant from the plaintiff, under the contracts referred to in the bill, for power furnished between the 22d of November, 1909, and the 30th of November, 1910, is ascertained and determined to be the sum of fifteen hundred and sixty-two dollars and fifty-nine cents; that the said plaintiff company pay to the said defendant company the said sum of $1,562.59 with interest thereon from the first day of December, 1910, and that the plaintiff pay the costs of this proceeding; that the prothonotary file of record the foregoing findings of law and fact together with this decree, and that he give notice thereof to the parties or their counsel and if no exceptions be filed as provided in the equity rules final decree be entered as of course without further order.

Exceptions to the findings of fact and conclusions of law of the chancellor were dismissed. Plaintiff appealed.

*Error assigned* was in dismissing the exceptions.

*William S. Rial,* with him *William A. Griffith,* for appellant.

*Robert W. Smith,* with him *James S. Moorhead,* for appellee.

PER CURIAM, January 3, 1916:

The decree is affirmed on the opinion of the learned judge of the court below entering the decree nisi.